UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ATS EQUITY, L.L.C., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:23-cv-00785-SEP |
| | ) |
| ADVANCED TECHNOLOGY | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Before the Court are the parties' cross motions for summary judgment, Docs. [15], [22]. For the reasons set forth below, the Court grants in part Plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment.

### FACTS AND BACKGROUND

On or about March 12, 2018, Defendant Advanced Technology Services (ATS) and its shareholders, including Plaintiffs ATS Equity (ATSE) and Response Systems, entered into the Fourth Amended and Restated Shareholders Agreement ("Agreement"). Doc. [27] ¶ 3. The Agreement provides ATS with a call option to purchase ATSE's shares "for a purchase price per share equal to the greater of (A) the FMV per Share or (B) the Derived Value per Share," Doc. [16-2] at 36, and to purchase Response Systems' shares "for a purchase price per share equal to the FMV per Share." *Id*. at 39. Pursuant to Section 1(n) of the Agreement, "FMV per Share" is defined as the "per share appraised value of the Company's Common Stock as reflected in the then latest annual appraisal of the Common Stock obtained by the Stock Fund Trustee from the Stock Fund Appraiser." *Id*. at 6-7. There are exceptions to the default definition, however. The first relevant exception is found in clause (iv), which states:

> for purposes of Sections 8 and 11, in lieu of the value implied by the then latest annual or interim appraisal of the Common Stock obtained by the Stock Fund Trustee from the Stock Fund Appraiser (collectively, the "Latest Stock Fund Appraisal") or any other appraisal(s) obtained in accordance with clause (v)(B) of this definition, the "FMV per Share" may be determined by mutual agreement of each Protected Party and the Company (but in the absence of such mutual agreement, the "FMV per Share" shall be determined as otherwise provided by this definition) . . . .

*Id*. at 7. The second relevant exception is found in clause (v), which outlines the two scenarios in which the "'FMV per Share' . . . shall be the per share appraised value of the Company's

Common Stock as reflected in an *interim appraisal* of the Common Stock prepared by the Stock Fund Appraiser . . . ." *Id*. at 8 (emphasis added)

> (A) if the Company or any Shareholder whose Shares are being purchased pursuant to Sections 7, 8, 10, 11 or 12 ("Selling Shareholder") disputes the per share appraised value of the Company's Common Stock reflected in the Latest Stock Fund Appraisal that is utilized to determine the FMV per Share, in good faith, (1) due to the existence or occurrence of one or more circumstances, conditions or events that were not available for consideration by the Stock Fund Appraiser in preparing the latest annual appraisal of the Common Stock, or (2) for such other reasons as reasonably should be considered in an appraisal of the Common Stock, determined in good faith using commercial reasonable standards, and specified in reasonable detail in a written notice from the Selling Shareholder to the Company; or (B) . . . if the latest annual appraisal of the Common Stock obtained by the Stock Fund Trustee from the Stock Fund Appraiser was prepared as of a date that is more than three (3) months before the particular date or event for which the term "FMV per Share" is being applied . . . , then, except as otherwise specifically provided in clauses (i), (ii) and (iii) of this definition, the "FMV per Share" in each such case shall be the per share appraised value of the Company's Common Stock as reflected in an interim appraisal of the Common Stock prepared by the Stock Fund Appraiser as of the end of the month immediately preceding the month in which the particular date or event for which the term "FMV per Share" is being applied has occurred (or as of such other date upon which the Company and the Selling Shareholder may mutually agree). The Stock Fund Appraiser shall be directed to prepare such interim appraisal of the Common Stock in a manner consistent with its preparation of the annual appraisal of the Common Stock . . . .

*Id*. at 7-8. Part B of clause (v) also outlines three scenarios in which the FMV per Share is determined through a process known as the 1-2-3 appraisal process.

> If the Stock Fund Appraiser is unable or unwilling to prepare such interim appraisal of the Common Stock as in this clause (v)(B) or if the "FMV per Share" is being determined in accordance with clause (iv) and/or clause (v)(A) of this definition (an "other appraisal"), then the per share appraised value of the Company's Common Stock for purposes of this definition shall be determined by a Qualified Appraiser mutually agreed to by the Company and the Selling Shareholder(s) owning a majority of the Shares to be purchased (or, if FMV per Share is not being utilized with respect to the purchase of Shares pursuant to Sections 7, 8, 10, 11 or 12, by a Qualified Appraiser selected by the Company). In the event the Company and the Selling Shareholder(s) owning a majority of the Shares to be purchased cannot mutually agree upon a Qualified Appraiser within forty-five (45) days of the particular date or event for which the term "FMV per Share" is being applied, the Company, on the one hand, and the Selling Shareholder(s) owning a majority of the Shares to be purchased, on the other hand, each will select a Qualified Appraiser to determine the per share appraised value of the Company's Common Stock for purposes of this definition; provided, however, if either the Company or the Selling Shareholder(s) owning a majority of the Shares to be purchased do not select a Qualified Appraiser within such 45 day period, the Company or the Selling Shareholder(s) owning a majority of the Shares to be purchased that made such a selection, as the case may be, shall select the second Qualified Appraiser.

*Id*. at 7-8.

On April 5, 2023, ATS sent a notice to ATSE to call its 1,450,382 shares under Section 11 of the Agreement.  Doc. [35] ¶ 37.  At the time of the call, ATSE owned a majority of the shares to be purchased by ATS.  *Id*. ¶ 57.  Nearly three weeks later, on April 25, 2023, ATS sent a notice to Response Systems to call 163,067 of its shares under Section 12(b) of the Shareholder Agreement.  Doc. [35] ¶ 66.  Because the existing appraisal was more than three months old, pursuant to clause (v)(B), the Stock Fund Appraiser was required to prepare an interim appraisal.  *See* Doc. [28-6]; [28-13].  An interim appraisal was prepared, and the FMV per Share was calculated at $33.90.  Doc. [35] ¶ 53.

On May 11, 2023, ATSE provided ATS with "formal notice that it was electing to move forward with the 1-2-3 appraisal process since the parties had not reached a mutual agreement on the FMV per Share nor had they reached a mutual agreement regarding the selection of one Qualified Appraiser to determine said FMV per Share."  *Id*. ¶ 58; *see* Doc. [28-4].  In the notice, ATSE also informed ATS of its selection of Croft & Bender, of Atlanta, Georgia, as its Qualified Appraiser.  Docs. [35] ¶ 60; [28-4].  ATS did not select a Qualified Appraiser within 45 days of the call notice as contemplated by clause (v)(B).  Doc. [35] ¶ 61.  ATS then sent a letter to ATSE on May 24, 2023, stating, in relevant part:

> None of the three situations in Section 1(n)(v) that would give rise to the need for an "other appraisal" have been satisfied, and therefore the provisions of the Agreement relating to an "other appraisal" are inapplicable and irrelevant. As a result, your engagement of Croft & Bender, and any work they do pursuant to your engagement of them, can have no impact on the determination of FMV per Share.

*Id*. ¶ 62; *see* Doc. [28-5].  ATS has since refused to "participate and cooperate" with ATSE in the 1-2-3 appraisal process.  Doc. [35] ¶ 64.

On June 8, 2023, Response Systems provided ATS with "formal notice that it was electing to move forward with the 1-2-3 appraisal process."  *Id*. ¶ 68.

> Please be advised that Response Systems elects that the FMV per Share, for purposes of establishing the purchase price for the Shares, to be determined by the "other appraisal" process described in clause (v)(B) of Section 1(n) of the Agreement, because the FMV per Share is being determined in accordance with both clause (v)(A)(1) and clause (v)(A)(2) of Section 1(n).
>
> Clause (v)(A)(1) of Section 1(n) applies because Response Systems disputes the per share appraised value of the Company's Common Stock reflected in the 2023 Appraisal, in good faith, due to the existence or occurrence of one or more circumstances, conditions or events that were not available for consideration by the Stock Fund Appraiser in preparing the appraisal.

3

> Furthermore, clause (v)(A)(2) of Section 1(n) applies because Response Systems disputes the per share appraised value of the Company's Common Stock reflected in the 2023 Appraisal, in good faith, for such other reasons as reasonably should be considered in an appraisal of the Common Stock, determined in good faith using commercial reasonable standards and specified in reasonable detail in written notice from the Selling Shareholder to the Company. See Exhibit A attached hereto and incorporated herein by reference.
>
> Pursuant to clause (v)(A)(1), clause (v)(A)(2), and clause (v)(B) of Section 1(n) of the Agreement, Response Systems hereby gives the Company notice of its selection of Croft & Bender, of Atlanta, Georgia, as its Qualified Appraiser to determine the FMV per Share of the Shares.

Doc. [28-7].  ATS did not select a Qualified Appraiser within 45 days of the call notice as contemplated by clause (v)(B).  Doc. [35] ¶ 70.  ATS then sent a letter to Response Systems on June 21, 2023, asserting that its notice did "not establish a valid basis for the determination of FMV per Share by the 'other appraisal' process."  Doc. [28-8].

Despite the dispute over valuation, ATS went on to deliver a check to ATSE in the amount of $50,560,316.52 (number of shares multiplied by the $34.86 derived value, which exceeded the $33.90 FMV per Share determined by the interim appraisal) and a check to Response Systems in the amount of $5,527,971.30 (number of shares multiplied by the $33.90 FMV per Share determined by the interim appraisal).  Doc. [27] ¶¶ 52, 53.  The parties agreed that Plaintiffs' cashing of the checks would not constitute "accord and satisfaction" of the disputed valuation.  *Id.* ¶ 54.

On June 19, 2023, ATSE and Response Systems filed suit against ATS.  *See* Doc. [1]. On July 10, 2023, Plaintiffs filed an Amended Complaint, which contains the following counts:

> Count I: Breach of Contract (ATSE)
>
> Count II: Breach of Covenant of Good Faith and Fair Dealing (ATSE)
>
> Count III: Breach of Contract (Response Systems)
>
> Count IV: Breach of Covenant of Good Faith and Fair Dealing (Response Systems)

Doc. [7].

## LEGAL STANDARD

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  Material facts are those that "might affect the outcome of the suit under the

4

governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The question before the Court is one of contract interpretation:  Does the Agreement entitle Plaintiffs to invoke the 1-2-3 appraisal process provided for in clause (v)(B) of Section 1(n)?  The parties agree that the Court should apply Delaware law.  *See* Docs. [17] at 7; [23] at 4.  The principles used by Delaware courts to interpret contracts are "well-established."  *Holifield v. XRI Investment Holdings LLC*, 304 A.3d 896, 924 (Del. 2023).

> When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language.  Contracts will be interpreted to give each provision and term effect and not render any terms meaningless or illusory.  When a contract is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions.  Language is ambiguous if it is susceptible to more than one reasonable interpretation.  An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract.  The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous.

*Id*.  In contract disputes, summary judgment may be granted when "the language at issue is clear and unambiguous."  *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012)).  "But, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence."  *Id*.  "In those cases, summary judgment is improper."  *Id*.

**I.   ATSE is entitled to judgment as a matter of law on Count I.**

Section 11 provides that the purchase price per share shall be the "greater of (A) the FMV per Share or (B) the Derived Value per Share."  Doc. [16-2] at 36.  Section 1(n) of the Agreement defines FMV per Share as the "per share appraised value of the Company's Common Stock as reflected in the then latest annual appraisal of the Common Stock obtained by the Stock Fund Trustee from the Stock Fund Appraiser."  *Id*. at 6-7.  Clause (iv) contains one exception to the default definition:

> for purposes of Sections 8 and 11 . . . the "FMV per Share" may be determined by mutual agreement of each Protected Party and the Company (but in the absence of such mutual agreement, the "FMV per Share" shall be determined as otherwise provided by this definition);

Doc. [16-2] at 7.  Section 8 applies only to Prudential, and Section 11 applies only to ATSE.  A "Protected Party" is defined as "(i) Prudential, so long as Prudential holds any Shares, and (ii) ATS Equity, so long as (A) ATS Equity holds Shares equal to at least 10% of the number of

Shares designated as ATS-E Shares in Section 10(a) and (B) James D. Eckhoff (or, to the extent James D. Eckhoff is unable or unwilling to serve, Birch M. Mullins or Edward T. ('Tee') Baur) serves as the manager of Response Systems."[1] ATSE maintains that, because there was no mutual agreement between ATS and each Protected Party—i.e., ATSE and Prudential— it was entitled to elect the 1-2-3 appraisal process set forth in clause (v)(B). ATS disagrees, arguing that ATSE failed to satisfy any of the necessary conditions to invoke the 1-2-3 appraisal process.

Section 1(n)(iv) states that, in the absence of mutual agreement, the definition of FMV per Share "shall be determined as otherwise provided by this definition." Clause (v)(B) of Section 1(n) provides that three scenarios can trigger the 1-2-3 appraisal process:

> (1) The Stock Fund Appraiser "is unable or unwilling to prepare such interim appraisal of the Common Stock as in this clause (v)(B)."
>
> (2) The FMV per Share is being determined in accordance with clause (iv).
>
> (3) The FMV per Share is being determined in accordance with clause (v)(A) of this definition (an "other appraisal").

Doc. [16-2] at 8. The first provision does not apply because the Stock Fund Appraiser did prepare an interim appraisal. The third provision also does not apply because ATSE did not dispute the appraisal in accordance with clause (v)(A). At first blush, the second provision also seems to be inapplicable, because there has been no "mutual agreement of each Protected Party and the Company." But that interpretation would render the second provision meaningless. As articulated by ATSE, "[i]f there were a mutual agreement on FMV per Share, there would obviously be no need to go through the lengthy and costly 1-2-3 appraisal process to determine FMV per Share." Doc. [23] at 8. Indeed, clause (v)(B) recognizes that any mutual agreement on the FMV per Share would be "***in lieu of the value implied by*** the then latest annual or interim appraisal of the Common Stock obtained by the Stock Fund Trustee from the Stock Fund Appraiser (collectively, the 'Latest Stock Fund Appraisal') ***or any other appraisal(s) obtained in accordance with clause (v)(B) of this definition***." Doc. [16-2] at 7 (emphasis added). Thus, ATSE argues, and the Court agrees, that the second provision—the FMV per Share is being determined in accordance with clause (iv)—encompasses the scenario in which shares are being

---

[1] All parties concede that ATSE qualified as a Protected Party at all times relevant to the instant motion. *See, e.g.*, Docs. [17] at 11; [34] at 5 n.1; [36] at 6; [26] at 8; [23] at 3, 8; *see also* Doc. [28-5] at 2 ("But keep in mind that even if the Company and ATS Equity were to enter into negotiations on some, as yet, unspecified topics and then reach some resolution in that regard, a 'mutual agreement' under Section 1(n)(iv) would not be available without Prudential (a Protected Party) agreeing as well.").

6

called pursuant to Section 8 (Prudential) or Section 11 (ATSE), and there is *no* mutual agreement between ATS and each Protected Party as to the FMV per Share.

ATS responds that such an interpretation renders part of Section 1(n)(v)(A) meaningless. ATS explains:

> If, as ATSE alleges, § 1(n)(iv) gives it the unfettered right (as a "Protected Party" whose shares are called pursuant to § 11) to dispute the valuation and seek an independent appraisal regardless of the procedures set forth in section 1(n)(v)(A), then the preamble in that section is rendered meaningless. Put differently, why would the preamble specify a procedure for a shareholder (including a Protected Party, such as ATSE, whose shares are called pursuant to section 11) to dispute the valuation if, as ATSE now alleges, such a party always has a right to dispute the valuation without reason? Under Delaware law ATSE's strained interpretation fails.

Doc. [17] at 11.  The Court is not persuaded.

At the outset, the Court notes its agreement with ATSE that Section 1(n)(v)(A) "is circular in stating that if a Selling Shareholder disputes the Latest Stock Fund Appraisal (which is defined [ ] as the Company's 'latest annual or interim appraisal'), then it may follow the dispute procedure under clause (v)(A) to obtain an 'interim appraisal' to determine the FMV per Share."  Doc. [40] at 4.  Doc. [16-2] at 7-8.  Thus, according to the text of clause (v)(A), disputing the interim appraisal does result in the preparation of the same interim appraisal.  But Delaware law requires the Court to "read the agreement as a whole." *Holifield*, 304 A.3d at 924. And clause (v)(B) goes on to state that the 1-2-3 appraisal process is available when the FMV per Share "is being determined in accordance with . . . clause (v)(A) of this definition." *Id*. at 8. The only reasonable interpretation that gives effect to each provision of the Agreement is that the 1-2-3 appraisal process is available when a shareholder disputes, in accordance with clause (v)(A), the *interim appraisal*, which is produced in two scenarios:  (1) a shareholder disputes the company's latest annual appraisal in accordance with the process set forth in Section 1(n)(v)(A), or (2) the existing appraisal is more than three months old.  ATS agrees with this interpretation, which is curious given that it cuts against their argument that clause (v)(A) is rendered meaningless if ATSE always has a right, in the absence of mutual agreement, to dispute the valuation.  Imagine a scenario in which ATSE or Prudential wants to obtain an interim appraisal but does not want to go through the 1-2-3 appraisal process.  In situations where the existing appraisal is not more than three months old, the only option for ATSE or Prudential to obtain an interim appraisal is through the dispute process set forth in Section 1(n)(v)(A).  As such,

Section 1(n)(v)(A) is not rendered meaningless by allowing ATSE and Prudential to invoke the 1-2-3 appraisal process without abiding by the process set forth in Section 1(n)(v)(A).

Pursuant to Delaware law, contracts should "be interpreted to give each provision and term effect and not render any terms meaningless or illusory." *Holifield*, 304 A.3d at 924. ATSE's interpretation is the only interpretation that gives effect to every provision and term of the Agreement. As reasonable minds could not differ as to the Agreement's meaning—that a Protected Party such as ATSE can invoke the 1-2-3 appraisal process in the absence of mutual agreement—the Agreement is unambiguous and the Court need not "look beyond the language of the contract to ascertain the parties' intentions." *GMG Cap. Invs., LLC*, 36 A.3d at 780 (quoting *Eagle Indus, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228 (Del. 1997)). ATSE is entitled to judgment as a matter of law on its breach of contract claim.[2]

## II. Response Systems is entitled to judgment as a matter of law on Count III.

Again, clause (v)(B) of Section 1(n) recognizes three scenarios in which the 1-2-3 appraisal process is triggered:

> (1) The Stock Fund Appraiser "is unable or unwilling to prepare such interim appraisal of the Common Stock as in this clause (v)(B)."
>
> (2) The FMV per Share is being determined in accordance with clause (iv).
>
> (3) The FMV per Share is being determined in accordance with clause (v)(A) of this definition (an "other appraisal").

Doc. [16-2] at 8. Response Systems claims that, after receiving the interim appraisal, it filed a dispute notice in accordance with clause (v)(A), but ATS refused to participate in the 1-2-3 appraisal process. ATS argues its refusal was proper, stressing that "§ 1(n)(v)(B) sets out, in detail, the method by which the '1-2-3' appraisal process occurs, and every step requires the involvement of: the 'Selling Shareholder(s) owning a majority of the Shares to be purchased.'" Doc. [34] at 12. That means, according to ATS, that to compel the 1-2-3 appraisal process, "a majority of the shares [must] agree there is a dispute and have timely given the requisite notice required by § 1(n)(v)(A)." *Id*. at 13. ATS thinks its interpretation makes sense because it "avoids the situation where a 1% shareholder could compel an alternate valuation." *Id*.

---

[2] Because the Court grants ATSE's motion for summary judgment as to Count I, ATSE's implied covenant claim (Count II) is dismissed as moot. *See* Doc. [26] at 13 ("If the Court rules in favor of Plaintiffs on their contract claims in Plaintiffs' Cross-Motion for Summary Judgment on Counts I and III, Plaintiffs concede that their implied covenant claims would be moot.").

8

While ATS's interpretation might have made better business sense, the text of Section 1(n)(v) does not support it. As Response Systems points out, ATS "conflates two distinct concepts—the election of the 1-2-3 appraisal process and the designation of the Qualified Appraiser once that process is triggered." Doc. [26] at 12. The Agreement does require the shareholder owning a majority of the shares to participate in the selection of the Qualified Appraiser, but it does not suggest that the process cannot be triggered unless a majority of the shares agree there is a dispute. And the Court is not at liberty to "add[ ] a limitation not found in the plain language of the contract." *F.A.M.E. LLC v. EmTurn LLC*, 2025 WL 1218227, at *5 (Del. Super. Ct. Apr. 25, 2025) (quoting *Emmons v. Hartford Underwrites Ins. Co.*, 697 A.2d 742, 746 (Del. 1997)). According to the unambiguous text of the Agreement, Response Systems was entitled to invoke the 1-2-3 appraisal process after it disputed, in accordance with clause (v)(A), the FMV per Share reflected in the interim appraisal.[3] Response Systems is thus entitled to judgment as a matter of law on its breach of contract claim.[4]

### III.    **The Court will hold a hearing on Plaintiffs' request for specific performance.**

In their Amended Complaint, ATSE and Response Systems seek damages or, in the alternative, specific performance as a remedy for ATS's breach of contract. *See* Doc. [7]. In their motion for summary judgment, they elect the specific performance remedy. *See* Doc. [23] at 9 n.11, 12 n.16. Plaintiffs request that the Court:

> Enter an Order requiring [ATS] to specifically participate in, and specifically perform, its obligations under the 1-2-3 appraisal process, as set forth in section 1(n)(v)(B), of the Agreement, to determine the FMV per Share purchase price required to be paid by [ATS] for calling Plaintiffs' shares including, but not limited to, the following:

---

[3] ATS mentions in passing that Response Systems' "notice" was insufficient. *See e.g.*, Docs. [17] at 9 n.3 ("ATS contends Response Systems in fact did not satisfy these obligations, but that issue is not before the Court in this motion."); [36] at 10 ("Although Defendant ATS denies the sufficiency of Response Systems' 'notice' under § 1(n)(v)(A) (as acknowledged by Plaintiffs, ECF 23 at p. 10, fn. 15), there is no need to address that issue within this summary judgment motion because math governs: Response Systems does not own a majority of the shares being called."). As ATS does not "support [t]his assertion with any argument or legal authority," the Court considers the issue waived. *Milligan v. City of Red Oak*, 230 F.3d 355, 360 (8th Cir. 2000); *see Jacam Chem. Corp. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024) ("A party may not make bare-bones assertions 'hoping that [the Court] will do its work for it by developing the argument and putting flesh on its bones.'" (quoting *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 324 (8th Cir. 2018))).

[4] Because the Court grants Response Systems' motion for summary judgment as to Count III, Response Systems' implied covenant claim (Count IV) is dismissed as moot. *See* Doc. [26] at 13 ("If the Court rules in favor of Plaintiffs on their contract claims in Plaintiffs' Cross-Motion for Summary Judgment on Counts I and III, Plaintiffs concede that their implied covenant claims would be moot.").

9

     i.     Enter an Order requiring [ATS] to cooperate fully with ATS Equity's designated Qualified Appraiser(s) and to provide all requested information to complete the independent (1-2-3) appraisal process, as set forth in the Agreement;

     ii.     Enter an Order declaring that due to [ATS's] failure to select its own Qualified Appraiser by the applicable deadline, ATS Equity "shall select the second Qualified Appraiser" for purposes of the 1-2-3 appraisal process, as set forth in the Agreement; [and]

     iii.     Enter an Order requiring [ATS] at its sole cost and expense to "cooperate fully" with the Qualified Appraiser(s) designated by ATS Equity and that [ATS] "shall make its books and records available for inspection and its management personnel available for interview, to the extent reasonably required," as set forth in the Agreement . . . .

*Id.* at 12-13. The Court will hear from the parties as to what, exactly, specific performance would entail before deciding whether to award it. The parties shall appear by Zoom on September 16, 2025, at 10:00 a.m. to set a hearing date and determine whether supplemental briefing is needed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, Doc. [22], is **GRANTED in part**.

**IT IS FURTHER ORDERED** that this matter is set for a Zoom conference with the Court on **September 16, 2025, at 10:00 a.m**. as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, Doc. [15], is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Counts II and IV are **DISMISSED** as moot.

A separate Order of Judgment will issue after the Court rules on the question of remedy. Dated this 2nd day of September, 2025.

                                                                      SARAH E. PITLYK
                                                                      UNITED STATES DISTRICT JUDGE